IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHA KELSO, | No. 2:11-cv-1960-TLN-CMK |
| Plaintiff, | |
| vs. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| REDDING POLICE DEPARTMENT, et al., | |
| Defendants. | |
| _____ / | |

      Plaintiff, proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendant's unopposed motion for summary judgment (Doc. 26).

## I.  BACKGROUND

**A.  <u>Plaintiff's Allegations</u>**

      This case proceeds on plaintiff's original complaint (Doc. 1) against defendant Dean Adams, an officer with the Redding Police Department.  The Redding Police Department was also named as a defendant in the complaint, but has been dismissed from this case.  Plaintiff alleges in her complaint that defendant Adams initiated a traffic stop based on plaintiff's appearance, where defendant accused her of looking like a terrorist.  She alleges defendant

Adams arrested her without reason, threatened her, touched her inappropriately, used unnecessary force against her, then cited her for a registration violation when her registration was current. The factual allegations in the complaint consist of one paragraph, as follows:

> I was falsely imprisoned by the Redding Police Department on July 22nd 2010. Officer Dean Adams pulled me over to inquire about what country I was from and why I was in America. I informed him I was an American citizen. His reply was, "then why do you look like a terrorist?" I looked at him in shock. He then demanded my drivers license and proof of insurance which I provided. I was then asked to step out of the vehicle, when I asked what I did wrong I was told, "shut up!" I began to cry, he again told me to "shut up!" this time clenching his gun. I was then arrested and told, "if I resisted in any way I would be shot." During the arrest I was kneed in my back, slapped, and inappropriately groped. The handcuffs were also on very tightly. I began sobbing immensely and told the officer my wrists were in extreme pain from the cuffs. He did not reply but instead made the cuffs tighter and roughly pulled my arm leading me to his cruiser where I was held approximately 45 minutes while my crying children were in my vehicle. Before he released me he asked, "why do [you] have that thing on your head?" I replied it is a scarf, called a hijab, sir." I was then released and cited with a registration violation, although my registration was current, valid, and plainly visible. My family and I were very afraid and distraught.

(Compl., Doc. 1, at 1).

**B. Undisputed Facts**

Defendant submits that plaintiff failed to respond to his requests for admissions, which have therefore been deemed admitted. Rule 36 of the Federal Rules of Civil Procedure allows a party to request another party to admit the truth of any matters relating to the facts at issue in the case or the genuineness of any described document. Fed. R. Civ. Proc. 36(a)(1). It further provides that a request for admission is deemed admitted if a response to the request is not served within thirty days of service of the request. Rule 36 continues by providing "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P 36(b). The court is permitted to allow the "withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining

1  or defending the action on the merits." Id.

2  By operation of law, due to plaintiff's failure to respond to the defendant's
request for admissions, the requests for admissions are deemed admitted. While the court has the
ability to withdraw or amend the admissions, it may do so only upon motion by the responding
party. Plaintiff has filed no such motion[1], nor has she filed an opposition to the pending motion
for summary judgment based on those admissions.

Given the above status, despite the allegations stated in the amended complaint,
the following facts are considered undisputed given the requests for admissions having been
deemed admitted:

1. The California Department of Motor Vehicles registration for the car plaintiff was driving at the time of the incident was expired;
2. Defendant Adams performed a traffic stop on plaintiff's vehicle because the registration for the vehicle was expired and for no other reason;
3. Defendant Adams had no information about plaintiff's religion or race at the time that he initiated a traffic stop on the vehicle plaintiff was driving;
4. Defendant Adams did not touch plaintiff in any wrongful or inappropriate way during the time of the incident which is the subject of the complaint;
5. Defendant Adams did not make offensive, wrongful or inappropriate statements to plaintiff about her religion or race during the incident which is the subject of the complaint;
6. Defendant Adams did not handcuff plaintiff as part of the incident which is the subject of the complaint;
7. At all times while plaintiff was outside of her car during the incident which is the subject of the complaint, a second officer was present in addition to defendant Adams;
8. Plaintiff signed her name to the traffic citation issued by defendant Adams of her own free will and without coercion by officer Adams or any other officer of the Redding Police Department;
9. After plaintiff signed the traffic citation and received a copy of the traffic citation from defendant Adams, defendant Adams indicated to plaintiff that she was free to go about her business and she did so.

(Mot. for Summ. J., Doc. 26-2).

---

[1] Even if plaintiff were to file such a motion at this late day, or question the use of the admissions in her objections to these findings and recommendations, she would have to not only allege good cause for failing to respond to the request for admissions, but also show good cause for not requesting assistance from the court in a timely manner pursuant to Rule 36(b). Because plaintiff has not address the admissions, the court is unaware whether plaintiff had some reason for her failure to respond to the requests. Because pro se plaintiffs are expected to follow the Federal Rules of Civil Procedure, plaintiff's failure to respond or address the issue leaves the court with the matters deemed admitted. See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995)

## II. STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433,

1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

### III. DISCUSSION

Plaintiff specifically alleges defendant violated her First, Fifth, Eighth and Fourteenth Amendment rights. She does not, however, allege any facts to support those claims. Instead, the factual allegations set forth in the complaint could form a Fourth Amendment violation claim, with allegations of unreasonable use of force during the detention and arrest without probable cause.

The Fourth Amendment protects against unreasonable searches and seizures without probable cause. "This guarantee of protection against unreasonable searches and

seizures . . . marks the right of privacy as one of the unique values of our civilization and, with few exceptions, stays the hands of the police unless they have a search warrant . . . on probable cause supported by oath or affirmation." McDonald v. United States, 335 U.S. 451, 453 (1948). "The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." United States v. Sharpe, 470 U.S. 675, 682 (1985). "[T]he central concern of the Fourth Amendment is to protect liberty and privacy from arbitrary and oppressive interference by government officials." United States v. Ortiz, 422 U.S. 891, 895 (1975). However, "one's expectation of privacy in an automobile and of freedom in its operation are significantly different from the traditional expectation of privacy and freedom in one's residence." United States v. Martinez-Fuerte, 428 U.S. 543, 561 (1976).

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809-10 (1996). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." Id. at 810. "Under the Fourth Amendment, government officials may conduct an investigatory stop of a vehicle only if they possess 'reasonable suspicion: a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" United States v. Twilley, 222 F.3d 1092 (9th Cir. 2000) (quoting United States v. Thomas, 211 F.3d 1186, 1189 (9th Cir. 2000)). Reasonable suspicion, not probable cause, is all that is required under the Fourth Amendment in the context of investigative traffic stops. See United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000). "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" Id. (quoting United States v. Michael R., 90 F.3d 340, 346 (9th Cir. 1996)).

The Fourth Amendment also protects individuals "against the use of excessive force during arrest procedures." Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624

(9th Cir. 1988) (citing Robins v. Harum, 773 F.2d 1004, 1008 (9th Cir. 1985)). The Fourth Amendment requires peace officers to use only an amount of force that is objectively reasonable in light of all the surrounding circumstances. Graham v. Common, 490 U.S. 386, 397 (1989). Assessing the level of permissible force "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (internal quotations marks and citations omitted).

Using deemed admissions as the only basis in support of a defense motion for summary judgment is not the court's preferred method of addressing such an action. However, without a motion from the plaintiff requesting her deemed admissions be withdrawn, or any opposition from plaintiff to the motion at all, the court is left with the admissions. Thus, defendants have established, despite the allegations in the complaint, that the undisputed facts show defendant Adams did not violate any of plaintiff's Constitutional rights during the traffic stop alleged in the complaint. Defendant Adams had reasonable suspicion to effect a traffic stop for expired vehicle registration, did not inappropriately touch plaintiff during the detention, did not make inappropriate statements to plaintiff during the incident, and did not detain plaintiff longer than necessary to issue a traffic citation. The burden then shifts to plaintiff to establish a genuine issue of material fact exists, which, given the lack of opposition to the motion, she has failed to do.

## IV.  CONCLUSION

The undersigned finds no genuine issue as to any material fact. Given plaintiff's deemed admissions, lack of any motion from plaintiff to have those admissions withdrawn, and lack of opposition to the motion for summary judgment, it stands that defendant Adams did not violate plaintiff's Constitutional rights during the traffic stop alleged in the complaint.

Based on the foregoing, the undersigned recommends that:

1. Defendant's motion for summary judgment (Doc. 26) be granted;
2. Judgment be entered in favor of defendant; and

3.	The Clerk of the Court be directed to enter judgment and close this case .

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

 DATED:  June 7, 2013

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE