1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   MARSHA KELSO,                              No. 2:11-cv-1960-TLN-CMK

12              Plaintiff,

13        vs.                                   FINDINGS AND RECOMMENDATIONS

14   REDDING POLICE DEPARTMENT, et al.,

15              Defendants.

16   _____/

17              Plaintiff, proceeding pro se, brings this civil rights action pursuant to 42 U.S.C.

18   § 1983.  Pending before the court is defendant's unopposed motion for summary judgment

19   (Doc. 26).

20                        **I.  BACKGROUND**

21   **A.  Plaintiff's Allegations**

22              This case proceeds on plaintiff's original complaint (Doc. 1) against defendant

23   Dean Adams, an officer with the Redding Police Department.  The Redding Police Department

24   was also named as a defendant in the complaint, but has been dismissed from this case.  Plaintiff

25   alleges in her complaint that defendant Adams initiated a traffic stop based on plaintiff's

26   appearance, where defendant accused her of looking like a terrorist.  She alleges defendant

                                    1

1    Adams arrested her without reason, threatened her, touched her inappropriately, used unnecessary

2    force against her, then cited her for a registration violation when her registration was current.

3    The factual allegations in the complaint consist of one paragraph, as follows:

4            I was falsely imprisoned by the Redding Police Department on July
             22nd 2010.  Officer Dean Adams pulled me over to inquire about
5            what country I was from and why I was in America.  I informed
             him I was an American citizen.  His reply was, "then why do you
6            look like a terrorist?"  I looked at him in shock.  He then demanded
             my drivers license and proof of insurance which I provided.  I was
7            then asked to step out of the vehicle, when I asked what I did
             wrong I was told, "shut up!"  I began to cry, he again told me to
8            "shut up!" this time clenching his gun.  I was then arrested and
             told, "if I resisted in any way I would be shot."  During the arrest I
9            was kneed in my back, slapped, and inappropriately groped.  The
             handcuffs were also on very tightly.  I began sobbing immensely
10           and told the officer my wrists were in extreme pain from the cuffs.
             He did not reply but instead made the cuffs tighter and roughly
11           pulled my arm leading me to his cruiser where I was held
             approximately 45 minutes while my crying children were in my
12           vehicle.  Before he released me he asked, "why do [you] have that
             thing on your head?"  I replied it is a scarf, called a hijab, sir."  I
13           was then released and cited with a registration violation, although
             my registration was current, valid, and plainly visible.  My family
14           and I were very afraid and distraught.

15   (Compl., Doc. 1, at 1).

16   **B.  Undisputed Facts**

17           Defendant submits that plaintiff failed to respond to his requests for admissions,

18   which have therefore been deemed admitted.  Rule 36 of the Federal Rules of Civil Procedure

19   allows a party to request another party to admit the truth of any matters relating to the facts at

20   issue in the case or the genuineness of any described document.  Fed. R. Civ. Proc. 36(a)(1).  It

21   further provides that a request for admission is deemed admitted if a response to the request is

22   not served within thirty days of service of the request.  Rule 36 continues by providing "[a]

23   matter admitted under this rule is conclusively established unless the court, on motion, permits

24   the admission to be withdrawn or amended."  Fed. R. Civ. P 36(b).  The court is permitted to

25   allow the "withdrawal or amendment if it would promote the presentation of the merits of the

26   action and if the court is not persuaded that it would prejudice the requesting party in maintaining

1   or defending the action on the merits." Id.

2   　　　　By operation of law, due to plaintiff's failure to respond to the defendant's

3   request for admissions, the requests for admissions are deemed admitted.  While the court has the

4   ability to withdraw or amend the admissions, it may do so only upon motion by the responding

5   party.  Plaintiff has filed no such motion[1], nor has she filed an opposition to the pending motion

6   for summary judgment based on those admissions.

7   　　　　Given the above status, despite the allegations stated in the amended complaint,

8   the following facts  are considered undisputed given the requests for admissions having been

9   deemed admitted:

10   　　　　1.　　The California Department of Motor Vehicles registration for the car
plaintiff was driving at the time of the incident was expired;

11   　　　　2.　　Defendant Adams performed a traffic stop on plaintiff's vehicle because
the registration for the vehicle was expired and for no other reason;

12   　　　　3.　　Defendant Adams had no information about plaintiff's religion or race at
the time that he initiated a traffic stop on the vehicle plaintiff was driving;

13   　　　　4.　　Defendant Adams did not touch plaintiff in any wrongful or inappropriate
way during the time of the incident which is the subject of the complaint;

14   　　　　5.　　Defendant Adams did not make offensive, wrongful or inappropriate
statements to plaintiff about her religion or race during the incident which

15   　　　　　　　is the subject of the complaint;

16   　　　　6.　　Defendant Adams did not handcuff plaintiff as part of the incident which
is the subject of the complaint;

17   　　　　7.　　At all times while plaintiff was outside of her car during the incident
which is the subject of the complaint, a second officer was present in
addition to defendant Adams;

18   　　　　8.　　Plaintiff signed her name to the traffic citation issued by defendant Adams
of her own free will and without coercion by officer Adams or any other

19   　　　　　　　officer of the Redding Police Department;

20   　　　　9.　　After plaintiff signed the traffic citation and received a copy of the traffic
citation from defendant Adams, defendant Adams indicated to plaintiff
that she was free to go about her business and she did so.

21   (Mot. for Summ. J., Doc. 26-2).

22

23   　　　[1]　　Even if plaintiff were to file such a motion at this late day, or question the use of
the admissions in her objections to these findings and recommendations, she would have to not
only allege good cause for failing to respond to the request for admissions, but also show good

24   cause for not requesting assistance from the court in a timely manner pursuant to Rule 36(b).
Because plaintiff has not address the admissions, the court is unaware whether plaintiff had some

25   reason for her failure to respond to the requests.  Because pro se plaintiffs are expected to follow
the Federal Rules of Civil Procedure, plaintiff's failure to respond or address the issue leaves the

26   court with the matters deemed admitted.  See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995)

3

## II.  STANDARD FOR SUMMARY JUDGMENT

1

2        The Federal Rules of Civil Procedure provide for summary judgment or summary

3   adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

4   together with affidavits, if any, show that there is no genuine issue as to any material fact and that

5   the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

6   standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P.

7   56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One

8   of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.

9   See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

10  moving party

11              always bears the initial responsibility of informing the district court of the
            basis for its motion, and identifying those portions of "the pleadings,
12          depositions, answers to interrogatories, and admissions on file, together
            with the affidavits, if any," which it believes demonstrate the absence of a
13          genuine issue of material fact.

14  Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

15       If the moving party meets its initial responsibility, the burden then shifts to the

16  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

17  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

18  establish the existence of this factual dispute, the opposing party may not rely upon the

19  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

20  form of affidavits, and/or admissible discovery material, in support of its contention that the

21  dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

22  opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

23  affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

24  242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

25  (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

26  could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433,

1    1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more

2    than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the

3    record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

4    there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is

5    sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the

6    parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

7              In resolving the summary judgment motion, the court examines the pleadings,

8    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

9    any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see

10   Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed

11   before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

12   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

13   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

14   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

15   1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for

16   the judge, not whether there is literally no evidence, but whether there is any upon which a jury

17   could properly proceed to find a verdict for the party producing it, upon whom the onus of proof

18   is imposed."  Anderson, 477 U.S. at 251.

### III.  DISCUSSION

20             Plaintiff specifically alleges defendant violated her First, Fifth, Eighth and

21   Fourteenth Amendment rights.  She does not, however, allege any facts to support those claims.

22   Instead, the factual allegations set forth in the complaint could form a Fourth Amendment

23   violation claim, with allegations of unreasonable use of force during the detention and arrest

24   without probable cause.

25             The Fourth Amendment protects against unreasonable searches and seizures

26   without probable cause.  "This guarantee of protection against unreasonable searches and

1    seizures . . . marks the right of privacy as one of the unique values of our civilization and, with

2    few exceptions, stays the hands of the police unless they have a search warrant . . . on probable

3    cause supported by oath or affirmation." McDonald v. United States, 335 U.S. 451, 453 (1948).

4    "The Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only

5    against *unreasonable* searches and seizures." United States v. Sharpe, 470 U.S. 675, 682 (1985).

6    "[T]he central concern of the Fourth Amendment is to protect liberty and privacy from arbitrary

7    and oppressive interference by government officials." United States v. Ortiz, 422 U.S. 891, 895

8    (1975).  However, "one's expectation of privacy in an automobile and of freedom in its operation

9    are significantly different from the traditional expectation of privacy and freedom in one's

10   residence." United States v. Martinez-Fuerte, 428 U.S. 543, 561 (1976).

11          "Temporary detention of individuals during the stop of an automobile by the

12   police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of

13   'persons' within the meaning" of the Fourth Amendment. Whren v. United States, 517 U.S. 806,

14   809-10 (1996).  "An automobile stop is thus subject to the constitutional imperative that it not be

15   'unreasonable' under the circumstances." Id. at 810.  "Under the Fourth Amendment,

16   government officials may conduct an investigatory stop of a vehicle only if they possess

17   'reasonable suspicion: a particularized and objective basis for suspecting the particular person

18   stopped of criminal activity.'" United States  v. Twilley, 222 F.3d 1092 (9th Cir. 2000) (quoting

19   United States v. Thomas, 211 F.3d 1186, 1189 (9th Cir. 2000)).  Reasonable suspicion, not

20   probable cause, is all that is required under the Fourth Amendment in the context of investigative

21   traffic stops. See United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000).

22   "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and

23   reasonable inferences, form the basis for suspecting that the particular person detained is engaged

24   in criminal activity.'" Id. (quoting United States v. Michael R., 90 F.3d 340, 346 (9th Cir. 1996)).

25          The Fourth Amendment also protects individuals "against the use of excessive

26   force during arrest procedures." Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624

1   (9th Cir. 1988) (citing <u>Robins v. Harum</u>, 773 F.2d 1004, 1008 (9th Cir. 1985)).  The Fourth

2   Amendment requires peace officers to use only an amount of force that is objectively reasonable

3   in light of all the surrounding circumstances.  <u>Graham v. Common</u>, 490 U.S. 386, 397 (1989).

4   Assessing the level of permissible force "requires a careful balancing of the nature and quality of

5   the intrusion on the individual's Fourth Amendment interests against the countervailing

6   governmental interests at stake."  <u>Id.</u> at 396 (internal quotations marks and citations omitted).

7              Using deemed admissions as the only basis in support of a defense motion for

8   summary judgment is not the court's preferred method of addressing such an action.  However,

9   without a motion from the plaintiff requesting her deemed admissions be withdrawn, or any

10   opposition from plaintiff to the motion at all, the court is left with the admissions.  Thus,

11   defendants have established, despite the allegations in the complaint, that the undisputed facts

12   show defendant Adams did not violate any of plaintiff's Constitutional rights during the traffic

13   stop alleged in the complaint.  Defendant Adams had reasonable suspicion to effect a traffic stop

14   for expired vehicle registration, did not inappropriately touch plaintiff during the detention, did

15   not make inappropriate statements to plaintiff during the incident, and did not detain plaintiff

16   longer than necessary to issue a traffic citation.  The burden then shifts to plaintiff to establish a

17   genuine issue of material fact exists, which, given the lack of opposition to the motion, she has

18   failed to do.

19                                      **IV.  CONCLUSION**

20              The undersigned finds no genuine issue as to any material fact.  Given plaintiff's

21   deemed admissions, lack of any motion from plaintiff to have those admissions withdrawn, and

22   lack of opposition to the motion for summary judgment, it stands that defendant Adams did not

23   violate plaintiff's Constitutional rights during the traffic stop alleged in the complaint.

24              Based on the foregoing, the undersigned recommends that:

25         1.    Defendant's motion for summary judgment (Doc. 26) be granted;

26         2.    Judgment be entered in favor of defendant; and

7

1          3.      The Clerk of the Court be directed to enter judgment and close this case .

2          These findings and recommendations are submitted to the United States District

3   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

4   after being served with these findings and recommendations, any party may file written

5   objections with the court.  Responses to objections shall be filed within 14 days after service of

6   objections.  Failure to file objections within the specified time may waive the right to appeal.

7   See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

8

9    DATED:  June 7, 2013

10

                                    _____
11                                  **CRAIG M. KELLISON**
                                    UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26